**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: September 30 2010**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: | Bankruptcy Adv. Pro. No. 03-3370 |
| | SIPA Liquidation |
| Continental Capital Investment Services, Inc. | |
| and Continental Capital Securities, Inc., | |
| | Adv. Pro. No. 09-3322 |
| Debtors. | |
| | Hon. Mary Ann Whipple |
| Thomas S. Zaremba, Trustee, | |
| Plaintiff, | |
| v. | |
| Federal Insurance Company, | |
| Defendant. | |

**MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS**

This adversary proceeding is before the court on Plaintiff's Motion to Dismiss Counterclaim [[Doc. # 34], Defendant's opposition [Doc. # 36], Plaintiff's reply [Doc. # 38], and Defendant's sur-reply [Doc. # 42]. This action was commenced in connection with an underlying broker-dealer liquidation proceeding brought against Continental Capital Investment Services, Inc. ("CCIS"), and Continental Capital Securities, Inc.("CCS"), (collectively, "Debtors"). Plaintiff is the liquidation trustee appointed under the Securities

Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA"). In his complaint, Plaintiff asserts claims for turnover of amounts allegedly owed by Defendant Federal Insurance Company ("Federal") under a Financial Institution Bond ("Bond") issued to CCIS in 2002, for breach of contract for failure to timely process and pay claims due under the Bond and to indemnify Plaintiff for certain defense costs, and for breach of Federal's duty of good faith and fair dealing to its insured. In addition to denying any liability as alleged by Plaintiff and asserting numerous affirmative defenses in its Answer, Federal asserts a counterclaim against Plaintiff. The counterclaim seeks "to reverse" a payment made under a Partial Payment Agreement entered into with Plaintiff and demands a money judgment in the amount of $758,700. The parties characterize the counterclaim as seeking rescission of the Partial Payment Agreement.

## FACTUAL ALLEGATIONS

The following factual allegations are set forth in the Answer and counterclaim.[1] On August 25, 2003, the Securities Investor Protection Corporation ("SIPC") filed a complaint and application against Debtors in the United States District Court for the Northern District of Ohio. SIPC sought the issuance of a protective decree ("Protective Decree") adjudicating that the customers of Debtors were in need of protection under SIPA. On September 29, 2003, the District Court entered its order commencing the liquidation proceeding of Debtors, appointing Plaintiff as Trustee and referring the liquidation proceeding to the bankruptcy court. On November 20, 2003, in accordance with SIPA, this court entered an order that required customers who suffered losses to submit their claims to the Trustee ("Customer Claims"). [Doc. # 1, ¶¶ 1 & 2; Doc. # 17, Answer, ¶¶ 1 & 2].

On December 3, 2002, in exchange for the payment of applicable premiums, Federal issued to CCIS a Bond with effective dates of January 1, 2003, to January 1, 2004. The Bond provides certain coverage for loss discovered by the insured during the Bond period, including coverage for loss resulting directly from dishonest or fraudulent acts committed by an employee, subject to the terms, conditions and exclusions contained in the Bond. [Doc. # 17, Answer, ¶¶ 16-18]. The Bond defines "Employee" to mean, *inter alia,* "a natural person in the service of the Insured, at any of the Insured's offices or premises covered hereunder whom the Insured compensates directly by salary or commissions and whom the Insured has the right to direct and control while performing services for the Insured." [*Id.* at ¶ 46].

---

[1] In its counterclaim, Defendant incorporates by reference its answers contained in all of the preceding paragraphs of the Answer. [Doc. # 17, ¶ 73].

09-03322-maw    Doc 51    FILED 09/30/10    ENTERED 09/30/10 15:58:47    Page 2 of 19

Following entry of the Protective Decree, the United States of America secured an indictment against William C. Davis, which included charges of theft from the accounts of Debtors' customers and carrying out a Ponzi scheme involving Debtors. [*Id.* at ¶ 12]. Judgment was entered against Davis after his plea of guilty as to multiple counts of the indictment. [*Id.* at ¶ 13]. Plaintiff has allowed and paid certain Customer Claims that he alleges are the result of Davis's dishonest or fraudulent acts. [*Id.* at ¶¶ 15; Doc. # 1, Complaint, ¶ 21].

Plaintiff submitted a Proof of Loss to Federal and has submitted various Customer Claims to Federal for indemnification under the Bond. [Answer ¶¶ 22 & 23]. The Proof of Loss submitted to Federal states that Plaintiff "believes that the losses described are the direct result of dishonesty and fraudulent acts of CCIS employee(s) including, but not limited to, Davis." [*Id.* at ¶ 77]. In response, Federal conducted an investigation of the claim. The investigation included requests for various documents related to the claimed loss from Plaintiff, including any and all information and documents that supported payment of claims pursuant to SIPA and that supported the claim that Davis was formerly an "Employee" of CCIS as that term is defined by the Bond. [*Id.* at ¶¶ 74-76]

In reliance upon the representations made by CCIS and its representatives that Davis was, at all relevant times, an employee of CCIS and upon the documents provided, Federal entered into a Partial Payment Agreement ("Partial Payment Agreement" or "Agreement") pursuant to which it accepted certain Customer Claims as covered losses under the Bond and paid $758,700 to Plaintiff. [*Id.* at ¶¶ 78-80]. The Agreement provides in relevant part as follows:

> 1. Federal shall pay the Trustee Seven Hundred Fifty-eight Thousand Seven Hundred Dollars ($758,700.00) ("Partial Payment") which sum constitutes the Covered Customer Claims less the deductible and the Trustee agrees to a reduction in Federal's Aggregate Limit of Liability by the amount of the Partial Payment to One Million Two Hundred Forty-one Thousand Three Hundred Dollars ($1,241,300.00).
>
> 2. Other than the reduction in the Aggregate Limit of Liability specified above, the Parties agree that the Partial Payment shall not in any way affect any of the Parties' rights, remedies, claims or defenses under the Bond, including, but not limited to, Not-Covered Losses, any Future Claim Submissions, and the applicability of any deductible.

[Doc. # 1, Complaint, ¶ 25 & attached Ex. H, p. 4; Doc. # 17, Answer, ¶¶ 25, 79].

After execution of the Agreement, Plaintiff provided information to Federal that establishes the status of Davis as an independent contractor with CCIS rather than an employee. [Answer, ¶ 81]. Because

3

Davis was not an employee of CCIS, there is no coverage under the Bond for any of the claimed loss since it was not "resulting directly from dishonest or fraudulent acts committed by an Employee." [*Id.* at ¶ 82]. The payment by Defendant pursuant to the Agreement was made pursuant to a mutual mistake of fact or a misrepresentation of material facts.

## LAW AND ANALYSIS

Plaintiff brings his motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) provides that a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In deciding a Rule 12(b)(6) motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint 'contains enough facts to state a claim to relief that is plausible on its face.'" *United States v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). While Rule 8(a)(2) does not require a complaint to set out detailed factual allegations, "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). Rather, "to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Id.*

The United States Supreme Court recently explained the "plausibility" standard first set forth in *Twombly*:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "
> . . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

As discussed more fully below, Plaintiff's motion is based, in part, on a number of affirmative

defenses to the counterclaim. While a complaint or a counterclaim does not fail to state a claim simply because some defense is potentially available, dismissal under Rule 12(b)(6) is appropriate where "the facts establishing the defense are definitively ascertainable from the complaint [or counterclaim] and the other allowable sources of information." *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006); *see New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (*abrogated on other grounds Merck & Co. v. Reynolds*, 130 S.Ct. 1784 (2010)) (stating that a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff is not entitled to relief); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2nd Cir 1998) ("courts may grant a pre-answer motion to dismiss on the basis of an affirmative defense where such defense appears on the face of the complaint"). Other allowable sources that may be considered in ruling on a Rule 12(b)(6) motion include materials that are public records or are otherwise appropriate for the taking of judicial notice. *New England Health Care Employees Pension Fund*, 336 F.3d at 501.

Arguments presented by Plaintiff in his motion and by SIPC at the hearing on the motion include the following:[2] Federal's counterclaim is barred by the doctrine of res judicata; Federal's counterclaim is untimely under Rule 60(c) of the Federal Rules of Civil Procedure; SIPA prohibits the relief requested by Federal; Federal is not entitled to rescission of the Partial Payment Agreement based on a mistake of fact because (1) Federal's allegations show that any mistake was a mistake of law and not a mistake of fact, (2) Plaintiff and/or SIPC have experienced a change in position in reliance on the Agreement, (3) Federal was negligent in failing to discover the mistake, and (4) Federal assumed the risk of any mistake; Federal has waived any claim for rescission; and Federal has failed to state a claim for rescission based upon fraud or misrepresentation. The court addresses each argument separately below.

## I. The Court Cannot Find That Federal's Counterclaim Is Barred By Res Judicata

Under the doctrine of res judicata, a party is precluded from bringing a claim if each of the following elements are present:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or should have been litigated in the prior action; and (4) an identity of the causes of action.

---

[2] SIPC is deemed to be a party in interest "as to all matters arising in a liquidation proceeding, with the right to be heard on all such matters, and shall be deemed to have intervened with respect to all such matters with the same force and effect as if a petition for such purpose had been allowed by the court." 15 U.S.C. § 78eee(d).

5

*Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577-78 (6th Cir. 2008) (quoting *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002)).

In arguing that the doctrine of res judicata precludes Federal's counterclaim in this case, Plaintiff relies on this court's November 29, 2007, order entered in the underlying liquidation proceeding granting a motion filed by Plaintiff to approve allocation of the proceeds of the Partial Payment obtained from Federal under the Agreement as "customer property" and to authorize Plaintiff to use those funds to pay customer claims pursuant to SIPA. [*See* Case No. 03-3370, Doc. # 916 ("Allocation Order) & Doc. # 877 ("Allocation Motion")]. While the Allocation Order and Allocation Motion go beyond the allegations in Federal's counterclaim, the court takes judicial notice of these documents and the court's docket in the underlying liquidation proceeding in considering Plaintiff's motion to dismiss. *See* Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it); *New England Health Care Employees Pension Fund*, 336 F.3d at 501.

Plaintiff contends that Federal was a party with respect to the Allocation Motion, and because no appeal was taken from the Allocation Order and no motion has been filed for relief from that final order, he argues that Federal is now barred from challenging the status of the proceeds of the Partial Payment as customer property. However, as argued by Federal, Plaintiff has not satisfied the second element of the res judicata defense, that is, that both actions are between the same parties or their privies.

According to Plaintiff, Federal was a party to the Allocation Motion because it was a party to the Partial Payment Agreement and the Agreement was the subject of the Allocation Motion, and because the Allocation Motion was served on Federal's attorney. Thus, Plaintiff argues that Federal had a full and fair opportunity to litigate its claim in the prior proceeding.

The court's docket in the underlying liquidation proceeding shows no entry of appearance by any attorney on behalf of Federal. To the extent the Allocation Motion sought a determination of an interest in the proceeds of the Partial Payment received from Federal, it was at least a contested matter governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 9014(a); *cf.* Fed. R. Bankr. P. 7001(2) and (9). As a contested matter, Plaintiff was required to serve the Allocation Motion in the manner provided by Rule 7004 of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 9014(b). For purposes of Plaintiff's instant Rule 12(b)(6) motion, the court cannot determine whether service on Federal's attorney satisfied any of the service options available under Rule 7004 and made Federal a party

09-03322-maw    Doc 51    FILED 09/30/10    ENTERED 09/30/10 15:58:47    Page 6 of 19

to the Allocation Motion.  *Compare* Fed. R. Bankr. P. 7004 *with* Fed. R. Bankr. P. 7005.  The counterclaim likewise contains no allegations indicating that Federal is a creditor or equity securing holder of Debtors.  The court cannot now determine for purposes of applying res judicata that Federal was  a party to the underlying liquidation proceeding, even under the expanded definition of "party" for bankruptcy purposes, *see Sanders Confectionery Prod., Inc. v. Heller Fin'l, Inc.*, 973 F.2d 474, 480-81 (6th Cir. 1992) (explaining that creditors and equity security holders must also be considered parties for *res judicata* purposes).

Plaintiff also argues that the second element of his *res judicata* defense is satisfied because Federal was in privity with two of the parties to the liquidation proceeding.  According to Plaintiff, by virtue of the Bond it issued to CCIS and the Partial Payment Agreement it entered into with Plaintiff, Federal was in privity with both CCIS and Plaintiff, who were parties to the Allocation Motion.  However, "[p]rivity in this sense means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented [by a party]."  *Id.* at 481.  Federal is not a successor in interest to Plaintiff or CCIS nor did it control the litigation in the earlier proceeding.  And the interests of Federal were not represented by either CCIS or Plaintiff.  In fact, Plaintiff's interests were in direct conflict with those of Federal.

Finally, Plaintiff cites *Tennessee Student Assistance Corporation v. Hood*, 541 U.S. 440 (2004), for the proposition that because the court's Allocation Order is an *in rem* order, it cannot be challenged even if Federal was given no notice at all of the Allocation Motion.  At issue in *Hood* was whether a state's sovereign immunity prohibited a bankruptcy court's *in rem* jurisdiction to determine the dischargeability of a student loan debt.  *Id.*  The Court found that it did not because "the court's jurisdiction is premised on the debtor and his estate, and not on the creditors."  *Id.* at 447.  Although the Court stated that "[a] bankruptcy court's *in rem* jurisdiction permits it to determine all claims that anyone, whether named in the action or not, has to the property or thing in question," proper notice was not an issue in *Hood*.[3]

In applying principles of *res judicata*, a "prerequisite" is that a "full and fair opportunity to litigate claims has occurred," *Bailey v. U.S.,* 54 Fed. Cl. 459, 474 (2002) *(citing Poyner v. Murray*, 508 U.S. 931, 933 (1993) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)), thus the requirement that the subsequent action be between the same parties or their privies.  The United States Supreme Court has made clear that this due process concern exists whether the previous proceeding was *in rem* or *in personam.  See*

---

[3] Although Tennessee Student Assistance Corporation did not participate in the bankruptcy case, Sallie Mae Service, Inc. had submitted a proof of claim to the bankruptcy court for the balance owed on the student loan and had subsequently assigned it to Tennessee Student Assistance Corporation.  *Hood*, 541 U.S. at 444.

7

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 796 n.3 (1983) (noting that the decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), rejected the premise that due process rights may vary depending on whether actions are *in rem* or *in personam*); *cf. Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle)*, 307 B.R. 28 (B.A.P. 6th Cir. 2004) (holding that creditor was denied due process of law by debtor's discharge of her student loan through her plan's "discharge by declaration" provision rather than by filing a separate adversary proceeding).

In this case, because Plaintiff asserts that his Allocation Motion, if granted, could cut off Federal's right to recover funds to which Plaintiff may not be entitled under the terms of the Bond, the proceeding was one in which Federal could be deprived of its property rights. *Cf. Mullane*, 339 U.S. at 657 (stating that a proceeding may deprive beneficiaries of property rights where it could cut off their rights to have a trustee of a trust fund answer for negligent or illegal impairments of their interests). Federal, therefore, had a right to expect that it would be served in accordance with the Federal Rules of Bankruptcy Procedure as to any such motion. Because the court cannot properly determine for purposes of Rule 12(b)(6) whether Federal was properly served with the Allocation Motion and whether it was afforded a full and fair opportunity to contest the allocation of the Partial Payment proceeds, Plaintiff's motion to dismiss based on *res judicata* principles as applied to this court's previous Allocation Order must be denied.

## II. The Court Cannot Find That Federal's Counterclaim Is Untimely Under Rule 60(c)

Plaintiff characterizes the relief that Federal demands in its counterclaim-- reversal of the payment and a money judgment for $758,700-- as rescission of the Partial Payment Agreement which would, in effect, undo the court's previous order allocating those funds to "customer property" and authorizing Plaintiff to use those funds to pay customer claims. Under Rule 60(b) of the Federal Rules of Civil Procedure, made applicable in this proceeding by Federal Rule of Bankruptcy Procedure 9024 and 15 U.S.C. § 78fff(b), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for certain enumerated reasons. Those reasons include newly discovered evidence and fraud or misrepresentation by an opposing party, which, Plaintiff argues, are the bases of Federal's rescission claim. A Rule 60(b) motion brought for those reasons must be brought "no more than a year after entry of the judgment or order." Fed. R. Civ. P. 60(c). According to Plaintiff, Federal's counterclaim, filed over twenty-six months after entry of the Allocation Order is, in essence, asking for Rule 60(b) relief beyond the filing deadline of Rule 60(c).

By its express terms, Rule 60(b) applies to "a party or its legal representative." As discussed above,

8

Federal was not in privity with a party to the Allocation Motion, and the court cannot determine whether Federal was a party to the Allocation Motion. There is no allegation or argument asserted that Federal is a legal representative of a party.

Nevertheless, Plaintiff relies on two Second Circuit cases in arguing that Federal's only procedural avenue of relief is under Rule 60(b) because its interests were in any event "strongly affected" by the Allocation Order. *See Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044 (2nd Cir. 1982); *Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180 (2nd Cir. 2006). The court does not find that these cases support the broad interpretation of Rule 60(b) advanced by Plaintiff.

In *Dunlop*, former airline employees filed separate complaints in state court alleging individual instances of age discrimination under state law. Subsequently, the Secretary of Labor brought an age-discrimination action against the airline on behalf of other employees under federal employment laws. The individual employees were unable to pursue their state claims, which were stayed pending resolution of the federal action, and did not participate in the federal action. After several years, the federal action was settled and a "Stipulation of Dismissal" with prejudice was entered. The airline then successfully sought dismissal of the individual employees' state law claims, arguing that the Stipulation of Dismissal extinguished their rights to pursue their claims. *Dunlop*, 672 F.2d at 1047-48. The individual employees, who were not parties to the federal action, moved pursuant to Rule 60(b)(6) to amend the stipulation by making it clear that it did not as a matter of federal law or agreement bar their pursuit of their individual state law claims. *Id.* at 1048. The district court denied their motion, finding that the individual employees lacked standing to invoke Rule 60. *Id.* at 1049. The court of appeals reversed the district's court's denial of the employees' Rule 60(b) motion and held that "[a]lthough Rule 60(b)(6) would not ordinarily be available to non-parties to modify final judgments," on the facts of that case the individual employees were "sufficiently connected" with the Secretary's action to entitle them to standing. *Id.* at 1052. Agreeing that the individual employees had improperly been denied any forum in which to present their age discrimination claims, the court of appeals specifically stated that its holding was "extremely narrow" in that the employees' motion only sought to clarify the legal effect of a final judgment already entered. *Id.* at 1053.

In *Grace*, the Second Circuit Court of Appeals, citing *Dunlop*, found that movants, who were neither parties nor a party's legal representative, were permitted to bring a Rule 60(b) motion. The court of appeals again limited its holding to the following facts:

> [W]here plaintiffs enter into a settlement agreement with a judgment-proof, pro se defendant
> with the intent at the time of the settlement to collect from a third party that allegedly

9

received fraudulent conveyances, and further, they attempt to use the judgment as a predicate for a fraudulent conveyance action against the third party, the third party is "strongly affected" by the judgment and entitled to standing to bring a Rule 60(b) motion.

*Grace*, 443 F.3d at 188. In explaining its narrow holding, the court stated:

Should the fraudulent conveyance claims be heard on the merits, the trial court could choose not to look behind the judgment for any improprieties. We thus carve out an exceedingly narrow exception to the well-established rule that litigants, who were neither a party, nor a party's legal representative to a judgment, lack standing to question a judgment under Rule 60(b).

*Id.* at 189.

To the extent that *Dunlop* and *Grace* can be construed as requiring a non-party to bring a Rule 60(b) motion rather than assert an equitable claim in a separate action, the facts of this case do not align with the facts in either of those cases. Unlike the movants in *Dunlop*, who were denied any forum in which to present their claims, Federal may present its equitable claim in this proceeding. And unlike the movants in *Grace,* the preclusive effect of the court's prior Allocation Order is yet to be determined depending on whether Federal was a party to that proceeding.

For the foregoing reasons, the court cannot find for purposes of Plaintiff's Rule 12(b)(6) motion that the time constraints of Rule 60 apply.

### III. The Court Cannot Find That SIPA Prohibits The Relief Requested by Federal

Under the provisions of SIPA, the trustee is directed to allocate "customer property" in a specific manner – first, to SIPC in repayment of certain advances made under SIPA; second, to the debtor's customers, who share ratably in such property based on and to the extent of their respective net equities; third, to SIPC as subrogee for the claims of customers; fourth, to SIPC in repayment of certain other advances made by it under SIPA; and finally, any remaining customer property becomes part of the general estate of the debtor. 15 U.S.C. § 78fff-2(c). Plaintiff argues that in light of this statutory allocation of customer property, he cannot now return to Federal the funds paid by it under the Partial Payment Agreement as they have been allocated by the court as "customer property." Thus, Plaintiff contends that, as a matter of law, Federal is not entitled to the relief it seeks. The court finds this argument also depends upon demonstrating the elements that must be shown to impose upon Federal a claim preclusive effect under the Allocation Order.

While SIPA requires a specific distribution of customer property, Plaintiff directs the court to no provision of SIPA that would preclude a finding that the funds were mistakenly determined to be customer

property. And the cases cited by Plaintiff do not support such a proposition. *See Peloro v. United States*, 488 F.3d 163 (3rd Cir. 2007) (rejecting a customer's conversion claim against the trustee since the certificated securities at issue were properly customer property under SIPA and were, therefore, no longer the personal property of the customer); *Rosenman Family, LLC v. Picard (In re Bernard L. Madoff Inv. Sec. LLC),* 401 B.R. 629 (Bankr. S.D.N.Y. 2009) (finding that because the plaintiff was a customer as defined in SIPA, it was not entitled to recover funds wired by it to the debtor ten days before the liquidation proceeding was commenced except to share ratably with other customers to the extent of their respective net equities). In neither case did the court address the situation where funds were allocated as customer property under facts mistaken to be true.

## IV. Federal Has Adequately Alleged A Mistake Of Fact

Federal's counterclaim is based on a mutual mistake as to Davis's status as an "Employee" of CCIS as that term is defined in the Bond. In its answer, Federal denies Plaintiff's allegation that "Davis was an Employee as defined in the Bond," [Doc. # 1, Complaint, ¶ 19], and states "[b]y way of further response, the allegations contained in Paragraph 19 of Plaintiff's Complaint pertain to legal conclusions to which no response is required," [Doc. # 17, Answer, ¶ 19]. According to Plaintiff, Federal has thus conceded that any mistake was not a mistake of fact but a mistake of law. Citing several Ohio appellate court cases, Plaintiff argues that a mistake of law cannot be a basis for rescission of a contract. *See Roberts v. Jones*, 86 Ohio App. 327, 331-32 (1949) (stating in dicta that there can be no relief by rescission for a mistake of law)*; Harville v. City of Franklin*, No. CA91-01-003, 1991 WL 144318, *5 (Ohio App. July 29, 1991) (stating that "[g]enerally, mistake of law is not grounds for relief by reformation or rescission of a contract"); *Hughes v. Reasnoer*, No. 430, 1934 WL 1893 (Ohio App. 1934). *But see FPC Financial v. Wood,* No. 2006-02-005, 2007 WL 731428, *7 (Ohio App. March 12, 2007) (citing *State ex rel. Walker v. Lancaster City School Dist. Bd. of Educ.,* 79 Ohio St.3d 216, 220 (1997), and stating that "[t]he doctrine of mutual mistake may permit rescission of a contract when the agreement is based on a mutual mistake of law or fact"); *Weber v. Budzar Indus., Inc.*, No. 2004-L-098, 2005 WL 2416585, *6 (Ohio App. Sept. 30, 2005) (same).

A mistake of law occurs when "a person is truly acquainted with the existence or nonexistence of facts but is ignorant of or comes to an erroneous conclusion as to their legal effect." *Nationwide Life Ins. v. Myers*, 67 Ohio App. 2d 98, 102-03 (1981). Whether Davis was an employee of CCIS as that term is defined in the Bond is a mixed question of law and fact. Thus, in Federal's answer, which it incorporated

11

by reference into its counterclaim, Federal both denied Plaintiff's allegation and properly stated that it pertains to a legal conclusion that requires no response. Federal alleges that before execution of the Partial Payment Agreement, Plaintiff believed Davis was "at all relevant times, an employee of CCIS as that term is defined by the Bond," [Answer, ¶ 78], and that Federal did not have the facts allegedly establishing that Davis was not an employee until after execution of the Agreement, [*Id.* at ¶ 81]. Federal has adequately alleged a mistake of fact.

## V. Specific Defenses To Rescission Based On Mutual Mistake

The Ohio Supreme Court has recognized the doctrine of mutual mistake as a ground for rescission of a contract under certain circumstances. *Reilley v. Richards*, 69 Ohio St. 3d 352 (1994). "A mutual mistake of fact is present when a mistake by both parties as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances." *Motorists Mutual Ins. Co. v. Columbus Finance, Inc.*, 168 Ohio App. 3d 691, 696 (2006). The mistake alleged in this case is the parties' belief that Davis was an employee of CCIS such that Federal had an obligation under the Bond to indemnify CCIS for loss resulting from his dishonest or fraudulent acts. Plaintiff and SIPC contend, however, that Federal is not entitled to rescission of the Partial Payment Agreement because they have experienced a change in position in reliance on the Agreement, and because Federal was negligent in failing to discover the mistake and assumed the risk of any mistake.

### A. Change In Position Of Plaintiff And SIPC

Plaintiff cites *Firestone Tire & Rubber Co. v. Central National Bank of Cleveland*, 159 Ohio St. 423, 433 (1953), for the proposition that a payment made under a mistake of fact may be recovered "provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund." Plaintiff contends that he has experienced such a change in position in that he placed the Partial Payment funds received from Federal into "customer property" accounts with other customer property funds and has used a portion of those funds to pay valid customer claims. He argues that "reversing" the Partial Payment would require an "insurmountable" tracing effort and would require recovering them from the victims of Davis's criminal schemes. *See Rocky River Bd. of Educ. v. Fairview Park Bd. of Educ.*, 63 Ohio App. 3d 385, 387 (1989) (stating that "[i[n order for there to be a detrimental change so as to defeat a claim for restitution, it must be determined that the money paid by mistake, its value, or its benefit was not retained . . . i.e., that the funds, their value or benefit, were no longer recoverable."). He also argues the any attempt to reverse the payments would contravene SIPA's requirement to satisfy claims promptly.

09-03322-maw    Doc 51    FILED 09/30/10    ENTERED 09/30/10 15:58:47    Page 12 of 19

The facts on which Plaintiff bases his arguments are not ascertainable from Federal's counterclaim or any other sources of information that the court may consider on a Rule 12(b)(6) motion. Federal's admission that Plaintiff has paid certain customer claims [*see* Answer, ¶ 15] is not an admission that the Partial Payment proceeds were used to make those payments. Likewise, Federal's admission to Plaintiff's allegation in the Supplements to Complaint that, since this adversary proceeding was commenced, Plaintiff has paid $210,000 to customers holding certain contingent claims [*see* Doc. # 26, ¶ 28S] is not an admission that the Partial Payment proceeds were used to make those payments. Rather, the quarterly reports filed by Plaintiff in the underlying liquidation proceeding, of which the court takes judicial notice,[4] indicate otherwise.

Those reports account for the proceeds of an earlier settlement with Berthel Fisher ("Berthel Proceeds"), as well as the Partial Payment proceeds at issue in this case, referred to as the "Chubb Proceeds" in the reports, both of which were allocated as customer property. Those reports clearly trace each customer claim payment as having been made from the Berthel Proceeds, not the Chubb Proceeds, including the $210,000 payment made after this proceeding was commenced. [*See* Doc. ## 937, 1017, 1113, 1180, 1251, 1310, 1360, 1417]. Plaintiff's Exhibit 1 presented as a summary of those reports at the hearing on the instant motion to dismiss also shows that the current balance of customer property remaining for distribution is greater than $1.7 million, an amount far in excess of the Partial Payment received from Federal that is at issue in this case.

Nevertheless, SIPC argues that it also has changed its position in reliance on Plaintiff's receipt of the Partial Payment and its allocation as customer property. SIPC argues that advances that it would have had to make to Plaintiff in order to satisfy valid customer claims implicate its duties, such as reporting advances to the Security and Exchange Commission and to Congress in its annual report and estimating the cost of completing liquidation proceedings that affects the functions performed by its auditors. SIPC also argues that the fact that such advances did not have to be made affects the level of assessments set by its board of directors on all registered brokers/dealers in the United States. However, to the extent that SIPC's arguments have merit, they go far afield from the allegations in Federal's counterclaim or any materials presented that are appropriate for the taking of judicial notice and are, therefore, not appropriate in support of this Rule 12(b)(6) motion.

---

[4] In its Sur-Reply in Opposition to Plaintiff's Motion to Dismiss Counterclaim, Federal refers to the ninth and fourteenth quarterly reports filed by Plaintiff in the underlying liquidation proceeding, and Plaintiff presented an exhibit at the hearing on the motion to dismiss summarizing the quarterly reports filed by him in that proceeding.

**B. Negligence And Assumption Of The Risk**

In Ohio, "a party is entitled to rescind a contract where 'there is a mutual mistake as to a material part of the contract and where the complaining party is not negligent in failing to discover the mistake.'" *R.J. Wildner Contracting Co. v. Ohio Turnpike Comm'n*, 913 F. Supp. 1031 (N.D. Ohio 1996) (citing *Reilly v. Richards*, 69 Ohio St. 3d 352 (1994)). In addition, a contract may be rescinded by the adversely affected party "only if that party did not bear the risk of the mistake. . . ." *Motorists Mutual Ins. Co.,* 168 Ohio App. at 697. A party bears the risk of a mistake when:

> (a) the risk is allocated to him by agreement of the parties; (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient; or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

*Id.* (quoting Restatement (Second) of Contracts § 154 (1981)).

Plaintiff first argues that Federal bore the risk of mistake since it was aware that it had only limited knowledge with respect to the facts regarding Davis's employment status but treated its knowledge as sufficient. Plaintiff directs the court to claims determination letters sent to him by Federal in 2007 and 2010 that are exhibits to his Complaint and Supplement to Complaint.[5] Those letters state that Federal conducted an "extensive investigation" of the claims set forth in the Proof of Loss submitted by Plaintiff and indicate that Federal's investigation of the SIPA claims were ongoing at the time of the Partial Payment Agreement. To the extent that the court may properly consider the contents of these letters in determining this Rule 12(b)(6) motion, they do not constitute an admission that Federal was aware that it had insufficient information regarding Davis's employment status at the time it entered into the Partial Payment Agreement. That Agreement was entered into in July 2007. Federal's 2007 claims determination letter states that "[t]he information provided to Federal indicates that, as of January 2, 2002, . . . William Davis became an Employee of CCIS as that term is defined by the Bond." That letter includes no suggestion that Federal was aware that it had incomplete or inaccurate information at that time.

Plaintiff also relies on the same letters to support its argument that Federal was negligent in discovering the alleged mistake since it failed to adequately investigate the Proof of Loss. The 2007 claims

---

[5] The 2007 letter is an attachment to an amended tolling agreement that is an exhibit to Plaintiff's adversary complaint. [see Doc. # 1, Complaint Ex. G & Ex. A attached thereto]. Federal admits only that exhibit G is a true and accurate copy of the tolling agreement [Complaint, ¶ 24; Doc. # 17, Answer, ¶ 24], which admission is incorporated by reference into its counterclaim [see Answer, ¶ 73]. The 2010 letter is an exhibit attached to Plaintiff's Supplements to Complaint by Interlineation, [Doc. # 26, Ex. 26S]. Federal admits that this document is a true and accurate copy of the 2010 letter. [Doc. # 26, ¶ 26S; Doc. # 33, ¶ 2]. This admission is also incorporated by reference into Federal's counterclaim. [See Doc. # 33, ¶ 1].

14

determination letter states that Federal "requested any and all information and documents which supported the payment of claims pursuant to [SIPA] and which formed the basis of a complete understanding of the history of CCIS and the alleged fraud perpetrated by Mr. Davis." [Doc. # 1, Complaint, Ex. G & Ex. A, p. 2 attached thereto]. Neither the counterclaim nor any other document that the court may properly consider indicate what information was provided to Federal during its investigation. The court finds the counterclaim and letters relied upon by Plaintiff are insufficient to show the existence of either the affirmative defense that Federal assumed the risk of any mistake or that it was negligent in discovering the alleged mistake, and are, therefore, insufficient to support a finding that Federal has failed to state a claim upon which relief can be granted.

The court does not find that *Motorists Mutual Insurance Co.*, relied upon by Plaintiff, requires a different conclusion. In that case, an automobile insurance company confused two accidents that had occurred on the same day and on the same road. In doing so, it contacted the financing company that held a security interest in a vehicle involved in one of the accidents and incorrectly indicated that its insured was at fault in the accident. The financing company and the insurance company executed a lienholder's agreement, pursuant to which the insurance company paid the claim and the financing company canceled its lien on the certificate of title and delivered the vehicle to the insurance company. *Id.* at 694. Several days later, the insurance company informed the financing company that it had mistakenly admitted liability for the accident, but the financing company refused to return the payment. *Id.*

In an action in which the insurance company sought repayment of the proceeds paid to the financing company, the court found that although a mutual mistake of fact existed, the risk of mistake must be allocated to the insurance company "because it was reasonable under the circumstances to do so" since the insurance company was responsible for the mistake and the financing company was an innocent party that bore no responsibility to discover the proper insureds involved. *Id.* at 697. Although the insurance company had confused the names involved in the two accidents, the court noted that a review of the accident reports or further communication with its insured would have revealed the proper parties. *Id.* The court stated that '[r]easonable standards of practice in the insurance industry demand that an insurer investigate an accident involving its insured and determine the proper parties involved prior to binding itself under contract to make a settlement payment." *Id.* "[G]iven that [the insurance company] had access to the facts upon which the mistake was founded but failed to properly investigate the matter," the court concluded that it should bear the costs of the mistake. *Id.* at 698. The court further found that the insurance company's

15

failure to identify the parties involved in the motor vehicle accidents involving its insureds was negligence that went beyond mere inadvertence or excusable neglect and amounted to a failure to conform to the fair and reasonable standards of practice within the insurance industry. *Id.* at 698-99 (citing *Hartman v. Tillett*, 86 Ohio App. 20, 23 (1948) (stating that negligence that is mere inadvertence or excusable does not preclude reformation of a contract to conform to the intention of the parties)).

Unlike the insurance company in *Motorists Mutual Insurance Co.*, the claim determination letters that Plaintiff relies upon in support of his argument indicate that Federal did, in fact, engage in an extensive investigation and, as a result, concluded that Davis was an employee of CCIS. There is no allegation that Federal had access to the information that it contends demonstrates otherwise at the time of the Partial Payment Agreement and there are no allegations or materials that the court may consider that show what information was provided to Federal during its investigation. Thus, neither Federal's statement of its counterclaim nor such other materials as may be considered in determining a Rule 12(b)(6) motion "affirmatively show" that Federal is not entitled to relief due to its negligence or assumption of the risk. *See New England Health Care Employees Pension Fund,* 336 F.3d at 501.

## VI. Waiver

"Waiver" is "the voluntary relinquishment of a known right or such conduct that warrants an inference of a relinquishment of that right." *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App. 3d 292, 295 (1994). "Waiver exists when an insurer, by acts or declarations, evidences a recognition of liability under the policy." *Leader Nat'l Ins. Co. v. Eaton,* 119 Ohio App. 3d 688, 692 (1997). In *Eaton*, the court held that payment of a claim by an insurer, "with knowledge of a potential defense against coverage and without any reservation of rights, waives the defense." *Id.*

Plaintiff argues that Federal waived all claims regarding the Partial Payment by making the payment without a reservation of rights with respect to that payment. Plaintiff relies on the following language in the Partial Payment Agreement:

> 1. Federal shall pay the Trustee Seven Hundred Fifty-eight Thousand Seven Hundred Dollars ($758,700.00) ("Partial Payment") which sum constitutes the Covered Customer Claims less the deductible and the Trustee agrees to a reduction in Federal's Aggregate Limit of Liability by the amount of the Partial Payment to One Million Two Hundred Forty-one Thousand Three Hundred Dollars ($1,242,300.00).
>
> 2. Other than the reduction in the Aggregate Limit of Liability specified above, the Parties agree that the Partial Payment shall not in any way affect any of the Parties' rights, remedies, claims or defenses under the Bond, including, but not limited to, Not-Covered

16

Losses, any Future Claim Submissions, and the applicability of any deductible.

[Doc. # 1, Complaint, Ex. H, p. 4]. Plaintiff argues that the exception clause in paragraph two excepts the Partial Payment from the reservation of rights that follows it. Federal, on the other hand, argues that the express language of paragraph two evidences its reservation of rights. Federal also argues that because it was unaware that Davis was not an employee at the time it made the payment, it did not waive its coverage defense by virtue of the fact that it made the Partial Payment.

The interpretation of a written instrument is, in the first instance, a matter of law for the court. If it is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations; it must simply give effect to the contractual language. *Blair v. McDonagh,* 177 Ohio App. 3d 262, 278 (2008) (citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.,* 46 Ohio St.3d 51, 53 (1989)). But if the provisions of a contract are ambiguous, an issue of fact exists as to the meaning intended by the parties. *Id.*; *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.,* 15 Ohio St.3d 321, 322 (1984). Because the court finds that the exception clause in paragraph two is ambiguous, the parties' arguments as to its meaning cannot be determined on a motion to dismiss.

Ambiguity exists "when the language in a contact is reasonably susceptible of more than one interpretation." *Kincaid v. Erie Ins. Co.*, 183 Ohio App. 3d 748, 754 (2009). The language at issue in this case is the exception clause of paragraph two: "Other than the reduction in the Aggregate Limit of Liability specified above." That language, together with the rest of paragraph two, could be interpreted simply as an arithmetic acknowledgment by the parties that the Partial Payment has reduced the aggregate limit of liability under the Bond but that the Partial Payment does not otherwise affect any right, remedy, claim, or defense they might have under the Bond. Alternatively, "the reduction in the Aggregate Limit of Liability specified above" could also be interpreted as referring specifically to the $758,700 Partial Payment and excepting that amount from any reservation of rights contained in paragraph two. Thus, it appears that extrinsic evidence that is not ascertainable from Federal's counterclaim is necessary to determine the meaning intended by the parties. *See Cranberry Fin., LLC v. S &V P'ship*, 186 Ohio App. 3d 275, 277 (2010) (stating that parol evidence may be necessary to resolve an ambiguity in a contract).

The court also finds Federal's alternative argument that it did not waive its coverage defense because it was unaware of Davis's alleged employee status at the time the Partial Payment was made involves facts that are outside the allegations of its counterclaim or any other material that the court may properly consider on a motion to dismiss. *Cf. Eaton*, 119 Ohio App. 3d at 692-93 (considering the information that had been

17

provided to the insurer in finding that, although the insurer did not know all of the facts, it had sufficient knowledge such that it "was aware of the circumstances" concerning its potential coverage defense).

## VII. Fraudulent Misrepresentation

The elements of a claim for rescission of a contract on the grounds that it was procured by a fraudulent misrepresentation include: (1) a representation of material fact; (2) made falsely with knowledge of its falsity, or with such disregard and recklessness as to its truth that knowledge may be inferred; (3) with the intent to mislead another into relying on it; (4) justifiable reliance upon the representation; and (5) a resulting injury proximately caused by the reliance. *Bradford v. B & P Wrecking Co., Inc.*, 171 Ohio App. 3d 616, 631 (2007). Federal has failed to allege each of these elements in its counterclaim.

Plaintiff argues that the allegation that Plaintiff stated in the proof of loss submitted to Federal that he "believes that the losses described are the direct result of dishonesty and fraudulent acts of CCIS employee(s) including, but not limited to, Davis" does not allege a misrepresentation of fact. The court agrees. This statement is not a statement of fact. *See Cross v. Ledford*, 161 Ohio St. 469, 475 (1954) (stating that there must be representations of "material matters of fact"); *Tibbs v. National Homes Const. Corp.,* 52 Ohio App. 2d 281, 287 (1977) ("a fraudulent representation must be of an existing fact"). It is a statement as to Plaintiff's belief or opinion regarding Davis's status as an employee of CCIS. However, Federal also alleges representations "made by the Insured [i.e. CCIS] and its representatives that William Davis was, at all relevant times, an employee of CCIS. . ." [Doc. # 17, Answer, ¶ 78]. This allegation does allege a representation of fact in support of Federal's counterclaim based on fraudulent misrepresentation.

Nevertheless, the counterclaim includes no direct or inferential allegation that Plaintiff, CCIS or its representatives made the alleged statements knowing they were false or that they were reckless as to its truth. Because this is a material element of a rescission claim based on fraudulent misrepresentation, the court will grant Plaintiff's motion to dismiss to the extent that Federal's counterclaim seeks rescission based on a fraudulent misrepresentation.

## **SUMMARY**

The court cannot determine from the record that it may properly consider under Rule 12(b)(6) that Federal's counterclaim is barred by the doctrine of res judicata, is governed by the time constraints of Rule 60(c), or is prohibited by SIPA. Because Federal has adequately alleged a mutual mistake of fact as a basis for relief and because the facts establishing Plaintiff's affirmative defenses are not ascertainable from the counterclaim or other allowable sources of information that the court may consider in determining a Rule

18

12(b)(6) motion, Plaintiff's motion to dismiss this counterclaim will be denied. However, because Federal has failed to allege facts respecting all material elements of its claim based on fraudulent misrepresentation, Plaintiff's motion to dismiss will be granted as to that counterclaim.

**THEREFORE,** for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Motion of Plaintiff to Dismiss Counterclaim [Doc. # 34] be, and hereby is, **GRANTED** only as to Federal's counterclaim based on fraudulent misrepresentation and is otherwise **DENIED,** without prejudice.